# Commonwealth *v.* Brent, Appellant.

*Criminal law—Murder—Drunkenness as a defense—Evidence.*

1. On the trial of an indictment for murder where drunkenness is set up as a defense, and a number of witnesses are produced by the defendant in support of such defense, a verdict of guilty of murder of the first degree will not be reversed where nearly a dozen witnesses for the commonwealth testify that he was not drunk, and the trial judge carefully defines the difference between murder in the first degree and murder in the second degree, and otherwise properly and adequately instructs the jury.

*Appeals—Assignments of error.*

2. Assignments of error which are discursive and argumentative, or which fail to give the context of the words assigned for error, are faulty.

Argued Oct. 5, 1911. Appeal, No. 124, Oct. T., 1911, by defendant, from judgment of O. & T. Somerset Co.,

Feb. T., 1911, No. 7, on verdict of guilty of murder of the first degree in case of Commonwealth v. Henry Brent. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Affirmed.

Indictment for murder.   Before KOOSER, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree.

*Errors assigned* were as follows:

1. " The court erred in saying to the jury, 'The offense is murder of the first degree.'   These words form the conclusion of the instructions as to murder of the first degree, but they are a separate expression; they are just such an expression as the jury would seize and construe to be an expression of the opinion of the court that the jury should convict of murder of the first degree."

2. " The court erred in his answer to defendant's first point which is as follows: 'The burden of proving every element of any offense is on the commonwealth and never shifts or changes.'   The answer was as follows: 'I affirm that.   The commonwealth must satisfy your minds beyond a reasonable doubt of every material element of the charge against the defendant, but when the defendant sets up as a defense that he was intoxicated to a degree that he was incapable of forming a willful, deliberate and premeditated intent to take life, the burden rests upon the defendant to satisfy you of such degree of intoxication, not beyond a reasonable doubt, but by a preponderance of the evidence.'   The court erred in that he did not affirm this first point without qualification.   He further erred in not defining to the jury the meaning of the phrase "preponderance of the evidence."   The qualification destroyed the force of the court's affirmation of the point.   The court further erred in emphasizing the matter of premeditation when there was no evidence offered by the commonwealth to show premeditation."

3. "The court erred in his answer to the fourth point which was as follows: 'The defendant is entitled to the benefit of any reasonable doubt that may exist in the mind of any one of the jurors who try him, after a calm, full and passionless consideration of all the evidence submitted.' The answer was as follows: 'The verdict of a jury in the criminal courts in Pennsylvania must be unanimous, and of course as there cannot be unanimity so long as anyone persist he is in possession of a reasonable doubt, there cannot be a verdict of guilty, and so far that condition of this point is affirmed, but it is the duty of the jurors to discuss and weigh and carefully consider the testimony of the case and all the facts in the case and to arrive at a unanimous conclusion if they can. If they cannot it results in a mistrial, of course. A reasonable doubt is not a doubt that you can summon up out of nothing, to escape a duty that might seem disagreeable or burdensome, but that doubt must arise and stand upon the testimony in the case. If the testimony raises such a doubt in the mind of a juror or more than one juror so as to prevent a unanimous verdict of the jury, that of course enures to the benefit of the defendant as stated in this point.' The point should have been affirmed without qualification. The attempted definition of reasonable doubt fails to give any adequate notion of what constitutes a reasonable doubt."

4. "The court erred in his answer to the fifth point, which was as follows: 'It is the duty of any one of the jurors in whose mind, after a careful consideration with his fellow jurors of all the evidence, a reasonable doubt exists as to any essential element of first degree murder, to refuse to convict the defendant of first degree murder.' The answer was as follows: 'As I have said to you in the other point, it is the duty of the jurors to weigh together and carefully consider the evidence and arrive at a conclusion if you can. I have already answered you that if a reasonable doubt exists as to any essential element of murder of the first degree, you could not con-

vict of murder of the first degree, but if on the other hand there would be no such doubt it follows you should convict, and just as I have said with reference to the preceding point, there must be unanimity of verdict, and as long as one juror has a reasonable doubt, it is his duty to weigh the testimony with the others and banish the doubt if he can. If not it enures to the benefit of the defendant.' The court erred in this that he did not affirm the defendant's fifth point without qualification."

5. "The court erred in his answer to the defendant's sixth point, which was as follows: 'Evidence of good character is to be regarded as a substantial fact, like any other tending to establish the defendant's innocence, and ought to be so regarded by the court and jury.' The court erred in not affirming this point without qualification and further erred in reading and answering it in connection with the seventh point."

6. "The court erred in his answer to defendant's seventh point, which was as follows: 'Evidence of good character is not a mere makeweight thrown in to assist in the production of a result that would happen at all events, but it is positive evidence and may of itself, by the creation of a reasonable doubt, produce an acquittal.' The answer to the sixth and seventh points was as follows: 'That is true and these points are affirmed, that is to say, good character may work an acquittal, but good character is to be considered not by itself so as to work an acquittal upon it alone. It may of itself raise a reasonable doubt, but it is to be considered together with the other testimony, and if all the testimony raises such doubt it operates as I have said to the benefit of the defendant in his acquittal. If not, if after considering all the testimony you have no reasonable doubt of the defendant's guilt, and the degree of the crime, you will render your verdict accordingly.' The court erred in that he did not answer these points separately. The court further erred in that he did not affirm each of them separately and without qualification. The court further erred

in that he misstated the law as to evidence of good character in saying, 'Good character is to be considered not by itself so as to work an acquittal upon it alone.' Good character may be the only defense and may work an acquittal with nothing else. In this case the good character for peace of the defendant was entitled to very careful consideration. The manner in which the points were read and their being answered as they were, robbed them of all force in the minds of the jury."

7. "The court erred in his answer to the eighth point, which was as follows: 'If jury believe from the evidence that at the time of the killing, the defendant, Henry Brent, did not know the consequences of his act and did not commit said act in pursuance of a previously formed purpose or design, then the law does not regard him as guilty of murder of the first degree.' The answer was as follows: 'I affirm that point, saying to you as I did before that purposes may be formed quickly or may be of a longer standing.' The court erred in not affirming the point without qualification. · What difference did it make as to when a purpose could be formed if the defendant could not form an intent?"

8. "The court erred in overruling the motion for new trial and in arrest of judgment."

*A. C. Holbert,* for appellant.

*John S. Miller,* district attorney, and *W. Curtis Truxal,* for appellee, did not appear.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

Henry Brent, a colored man, was convicted in the court below of murder of the first degree. It appears from the testimony that on January 28, 1911, he shot and killed one Charles Langley. The circumstances surrounding the homicide were as follows: the defendant purchased a revolver and cartridges about seven o'clock in the morn-

ing of the day of the shooting, and later went to spend the evening at a boarding house, where all the inmates were colored. At about ten o'clock in the evening Rufus Cofer, who had been commissioned by Langley to go to town to purchase some whisky, returned with two other men. They all entered the house, and about a half a dozen of them, including the defendant and the deceased, assembled in the kitchen and began drinking the whisky. After two of them had taken drinks the bottle was passed to the defendant who held it for some time before partaking of it. This provoked an altercation between him and the deceased who said, "Hurry up and take a drink so somebody else can get one." The defendant replied, "You don't need to tell me what to do; I know what to do; you don't need to tell me anything." Then Langley said, "I just told you to hurry up and take a drink so some one else can get one," and the defendant replied, "You don't need to tell me what to do; I know what to do. I won't stand for you to tell me anything." He then stepped to the dining-room door, drew a pistol from his pocket, and while standing within six feet of his victim fired two shots; one of them wounded a man named Anderson and the other one entered Langley's body and killed him almost instantly. The pistol was taken from the defendant by force, and he hurried from the house.

The defense was drunkenness, and the accused contends that under the evidence his crime cannot rise higher than murder of the second degree.

The defendant testified that on the night prior to the shooting he retired at twelve o'clock after having drunk a pint of whisky, and that the next morning he drank almost a quart of whisky between the hours of five and seven, after which he went to a shanty kept by an Italian and purchased and drank six bottles of beer; that he did not recollect anything that occurred subsequent to his drinking the beer until he was arrested between two and three o'clock in the morning of the day after the shooting. Three witnesses were called by the defense; one of whom

testified that he saw the defendant three times on the day of the shooting; that he saw him at eight o'clock in the morning, and that he was "drinking heavy"; that he saw him at noon, and at supper time, and that he was drunk on both of these occasions. Another witness testified that he saw him at eight o'clock in the evening of the day of the shooting, and that he seemed "half crazy, or drunk or something." And the last one testified that he saw him a few minutes past twelve o'clock on the morning of the twenty-ninth, that is, about two hours after the shooting, and that he was "moosing about"; that there was "something the matter with him," and he did not know whether he was "rum-dum or full of coke." There was also evidence that he had two drinks of whisky just before the shooting.

But the commonwealth produced nearly a dozen witnesses who testified that they had seen and observed the defendant on the day of the shooting and that he was not drunk. The man who sold him the pistol at about seven o'clock in the morning of that day said that he was "sober, and in good condition"; and four of the witnesses testified that they saw the accused in the house at about the time of the shooting, and that he was not drunk.

The specifications of error complain of the instructions given to the jury by the trial judge. When the charge and answers to points are taken as a whole the accused was given every protection to which he was entitled under the law, and the jury must have understood therefrom that the burden was upon the commonwealth to show all of the elements of murder of the first degree beyond a reasonable doubt or the prisoner could not be found guilty of more than murder of the second degree, and further, that the defense of intoxication would only have to be established by a fair preponderance of the evidence. The jury's attention was called to the testimony concerning the liquor imbibed by the defendant, and they were informed that if they should find the intoxication of the prisoner to have been so great as to

render it impossible for him to form a willful and deliberate attempt to take the life of the deceased, the homicide would not rise above the second degree. They were adequately instructed upon the subject of character evidence and were told that good reputation when established might raise a question in the mind of the jury whether a man with the character shown would be guilty of the offense charged, and they were sufficiently informed as to the effect of a reasonable doubt. Complaint cannot justifiably be made of the answers to the points when applied to the facts of this case and the defense set up; all of the qualifications were appropriate and none of them could have hurt the defendant. Finally, an examination of the evidence, in the light of the law as recently laid down in Commonwealth v. Detweiler, 229 Pa. 304, fails to convince us that the jury were not justified in drawing the conclusion of guilt in the degree fixed by the verdict.

Most of the specifications are discursive and argumentative, and the first fails to give the context of the words assigned for error; in these respects they are faulty, but we have considered them all and overrule them as lacking in merit.

The judgment is affirmed and the record is remitted to the court below for the purpose of execution.