## Commonwealth *v.* Digeso, Appellant.

*Criminal law—Murder—First degree—Evidence—Sufficiency — Trial—Cross-examination of defendant—Charge—Practice, O. T.*

1. On the trial of an indictment for murder it appeared that deceased, an ice cream vender, while driving his wagon along a street was met by the defendant and two companions; that a conversation took place in which deceased said to defendant "if you put your hand in my money box again I will break your head"; that deceased started to drive on and was followed by defendant who said, "me no afraid of you"; that deceased then took up an axe handle and shook it, striking defendant a slight blow in the face; that defendant stood still for about thirty seconds, and while deceased remained in the wagon drew a revolver and fired at him three times, lowering and raising his arm between each shot, the last of which was fatal. Defendant contended that the killing was in self defense and adduced evidence of his drunkenness at the time of the shooting. *Held,* (1) the fact that deceased scratched defendant's face with a stick, under such circumstances, was no justification for the shooting; (2) the question of the intoxication of the defendant was for the jury, and a verdict of guilty of murder of the first degree was warranted.

2. In such case the court did not err in overruling the defend-

ant's objections to questions put to him on cross-examination where one question when objected to, was not pressed and no request was made to the trial judge to direct the jury to disregard it, and where the other questions, complained of as immaterial, were answered by defendant without objection at the time.

3. In such case the overruling of an objection to a question put to the defendant on cross-examination as to the amount of money in his possession at the time of the shooting, and to which defendant replied; was not prejudicial to the defendant, and was not error.

4. A point for charge so drawn as to omit the undisputed fact that defendant fired three shots, of which only the last was fatal, and that he raised and lowered his arm between the shots, was properly refused, especially where the trial judge referred the jury to the general charge, which covered the subject-matter of the point; and another of defendant's points for charge, which was affirmed, covered substantially all the matter in the point which was refused which defendant could properly have asked for.

Argued May 1, 1916.    Appeal, No. 83, Jan. T., 1916, by defendant, from judgment and sentence of O. T. Schuylkill Co., Nov. Sessions, 1915, No. 1524, on verdict of guilty of murder of the first degree in case of Commonwealth v. Dominick Digeso, alias Domenico Digeso.    Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.    Affirmed.

Indictment for murder.    Before BECHTEL, P. J.

The facts appear by the opinion of the Supreme Court.

The jury found a verdict of guilty of murder of the first degree.    Sentence of death was subsequently imposed.    Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence and the charge of the court.

*J. H. Filbert, George W. Ryon* and *A. D. Knittle,* for appellant.—The verdict of guilty of murder of the first degree was not justified by the evidence: Commonwealth v. Heidler, 191 Pa. 375; Jones v. Commonwealth, 75 Pa. 403.

Without the specific intent to take life, the crime could rise no higher than second degree: Commonwealth v. Daley, 2 Clark 361; Commonwealth v. Ellenger, 1 Brewster 352; Commonwealth v. Sullivan, 13 Philadelphia 410; Commonwealth v. Eagan, 190 Pa. 10; Commonwealth v. Matz, 161 Pa. 207.

Killing in a street fight is murder in the second degree: Commonwealth v. Hare, 2 Clark 467.

A felonious homicide committed by one in a state of intoxication, when the mind is deprived of power to form a design with deliberation and premeditation, is murder in the second degree: Jones v. Commonwealth, 75 Pa. 403; Commonwealth v. Drum, 58 Pa. 9.

The verdict should have been no higher than manslaughter: Commonwealth v. Drum, 58 Pa. 9; Tiffany v. Commonwealth, 121 Pa. 165; Commonwealth v. Cleary, 148 Pa. 26.

Defendant thought deceased was about to get out of the wagon and continue the assault and was justified in shooting in self defense: Pistorius v. Commonwealth, 84 Pa. 158; Tiffany v. Commonwealth, 121 Pa. 165.

*C. A. Whitehouse,* District Attorney, with him *M. F. Duffy,* Assistant District Attorney, for appellee.

Opinion by Mr. Justice Potter, July 1, 1916:

The defendant was indicted for the murder of one J. H. James. He was tried and convicted of murder of the first degree. A new trial was refused and sentence of death by electrocution was imposed. Defendant has appealed, and his counsel contend that the evidence did not justify the finding of murder of the first degree. In his opinion refusing a new trial, the trial judge states that the evidence justified the jury in finding the facts as follows: "On the twenty-ninth of September, 1915, at about two o'clock in the afternoon, the deceased, who was a peddler of ice cream, was driving along the public highway through the village of Mount Carbon, in his ice

cream wagon, in pursuit of his business. At the north-
ern end of the town the defendant, in company with two
other Italians, stopped the deceased. The first conver-
sation testified to is that the deceased said to the defend-
ant, 'If you put your hand in my money box again, I will
break your head.' To this the defendant replied, 'Shut
up.' At this point the two other Italians came to the
side of the wagon and explained to James, the de-
ceased, that the defendant did not mean anything; that
he was only fooling. One of the other Italians then
purchased some ice cream for which he paid, and the de-
ceased picked up the lines, released the brake and was
about to proceed upon his way when the defendant again
came up to him and said, 'Me no afraid of you.' The
deceased thereupon reached behind him in the wagon
and got a part of an axe handle, some twelve or fourteen
inches long, which he shook at the defendant, saying, 'I
am not afraid of you.' In this shaking of the axe handle
its point came in contact with the cheek of the defend-
ant causing an abrasion of the same, from which the
blood ran down the defendant's cheek. The defendant
then stood still for probably thirty seconds, after which
he walked back behind the wagon, the deceased remain-
ing in the same, and there the defendant drew a revolver
from which he fired three shots at the deceased, taking
aim with each shot. During this time the deceased
dropped the piece of axe handle and threw up his hands.
The first two shots missed the deceased and the third
shot killed him almost instantly." The trial judge fur-
ther adds: "To defend his action the defendant inter-
posed two defenses, first, that he was intoxicated and did
not know what he was doing; secondly, that at the time
of the shooting the deceased was attempting to get out
of his wagon with the piece of stick still in his hand, and
he feared that, unless he shot, the deceased might kill
him or inflict great bodily harm.......In addition to this
the defendant proved good character, and it was also
shown, in fact not disputed, that the defendant and the

deceased were not acquainted with each other and probably had never seen each other before this occasion."

Our examination of the record confirms the accuracy of this summary of the evidence. It also appears from the testimony that in firing the three shots, the defendant lowered and raised his arm between shots, which tended to show increased deliberation of action. That James was killed by the final shot fired by defendant was not denied. We think the evidence was ample to sustain the finding of murder of the first degree. In Com. v. Eckerd, 174 Pa. 137, a case somewhat resembling the present one in its facts, Mr. Justice MITCHELL said (p. 149), that "the fully formed purpose to kill is a necessary element of murder of the first degree," and that "the intent to take life, fully formed, is presumed from the use of the weapon, and certainly where as in this case it was fired three times. 'The killing with a deadly weapon was admitted. There was no pretense that the wound was not designedly given. The intent to take life was presumable from the nature of the weapon used.' STRONG, J., Kilpatrick v. Com., 31 Pa. 198, 216." In Com. v. Krause, 193 Pa. 306, Mr. Justice FELL said (p. 308): "The nature of the weapon [a revolver] and the manner of its use [firing five shots, two of which were fatal] indicated an intention to kill." In Com. v. West, 204 Pa. 68, it was said, per curiam (p. 70): "We are all clearly of the opinion that the ingredients of murder of the first degree exist in this case. The fatal shot was fired from a deadly weapon and was directed against a mortal part. There was sufficient evidence, if believed by the jury, of deliberation and premeditation. The first shot did not kill but only disabled the officer. Between it and the time of firing the second and fatal shot ample time elapsed to enable the prisoner to form a conscious design to kill and to carry it into effect. As said by Judge RUSH in Commonwealth v. Smith, 'No time is too short for a wicked man to form in his mind his scheme of murder and to contrive the means of ac-

complishing it.' " In the present case, neither the first nor the second shot took effect, and the firing of the third shot was not only evidence of a conscious design to kill, but of a persistent and malicious intention to carry it into effect. The fact that the deceased threatened to strike defendant with a stick, or that he did scratch his face with it, was no justification for the shooting. The deceased was standing in his ice cream wagon, and defendant being on the ground could easily have kept out of reach. When the shots were fired, defendant was, according to one witness, standing four feet behind the wagon, and six feet from the deceased. According to his companion Russo, he was ten or twelve feet back of the wagon when he did the shooting. If the story of the occurrence as told by defendant and his companions had been accepted by the jury, the grade of homicide might have been reduced, but that was a matter for the jury, and it is not strange that they should have accepted the testimony of disinterested witnesses rather than that of participants in the affray. The question of intoxication of defendant was also for the jury, and the charge of the court was in line with the requirements of the law as stated in Commonwealth v. Detweiler, 229 Pa. 304, 308, and the cases there cited.

In the second assignment, error is alleged in overruling defendant's objections to certain questions which were put to him on cross-examination. The first question, to which objection was made, was not pressed, and if counsel felt that the mere asking of the question was injurious to their client, they should have requested the trial judge to instruct the jury to disregard it. Under this assignment counsel argued, at considerable length, questions which are not covered by any assignment of error. They admit, however, that certain questions which they regard as immaterial, referring to a letter said to have been written by Russo, or Grecco, companions of defendant, or by defendant himself, were an-

swered by him, on cross-examination, without any objection from them.

In the third assignment, error is alleged in overruling defendant's objection to the question put to defendant on cross-examination, as to the amount of money he had, after he paid his carfare. The question was perhaps immaterial, but, even if it were, it is not apparent that the answer was harmful to defendant. He was a witness in his own behalf, and the Commonwealth was entitled to inquire fully into the circumstances. The fact that he had some twenty-seven or twenty-eight dollars in his pocket could not have prejudiced him in the eyes of the jury.

In the fourth assignment, counsel complain of the answer of the trial judge to defendant's eighth point for charge. That point was: "If the jury believe from the evidence that Digeso did not prepare the pistol to take the life of James or anyone else, but upon the sudden impulse arising from the blows he received from James, and the passion they produced, he drew the pistol in a rage and gave the fatal shot, even if no doubt arises from the evidence that the act was committed in self-defense, no higher verdict in any event than that of manslaughter can be returned against defendant." For answer to this point, the judge referred the jury to the general charge. The point is so drawn as to leave out of view the fact, shown by the evidence, that defendant fired three shots, of which only the last one was fatal, and that he aimed the revolver each time, raising and lowering his arm between shots. The point might very well have been refused as put. But with respect to its subject-matter, the judge referred the jury to the general charge in which he fully defined murder of the first and second degree and manslaughter. No exception was taken to the charge. In the tenth point, defendant requested the judge to charge: "If the jury believed from the evidence that there existed in Digeso a sufficient cause of provocation, and a state of rage or passion without time

to cool, placing him beyond the control of his reason, and suddenly impelling him to the deed, then the verdict can rise no higher than manslaughter." The affirmance of this point gave to defendant substantially all of the matter in the eighth point for which he could properly ask, so we see no reasonable cause for complaint that the eighth point was not explicitly affirmed.

The assignments of error are overruled, the judgment is affirmed, and it is ordered that the record be remitted for the purpose of execution.