# Commonwealth *v.* Hoover, Appellant.

*Criminal law—Murder—Misconduct of spectators.*

A judgment of guilty of murder of the first degree will be reversed where it appears that the trial judge permitted, without interfering, the spectators in the court room to make frequent, open, manifest and hostile demonstrations towards the prisoner in evident disapproval of the nature and character of his defense, and for the evident purpose of influencing the conduct of the jury to the prejudice of the right of the prisoner to a fair and impartial trial.

Argued Jan. 3, 1910. Appeal, No. 331, Jan. T., 1909, by defendant, from judgment of O. & T. Crawford Co., Feb. T., 1909, No. 19, on verdict of guilty of murder of the first degree in case of Commonwealth *v.* Alton V. Hoover. Before

FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.  Reversed.

Indictment for murder.  Before PRATHER, P. J.

The opinion of the Supreme Court states the case.

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

*Error assigned* amongst others was (31) refusal of new trial.

*Frank J. Thomas* and *Wesley B. Best,* with them *George F. Davenport,* for appellant.

*O. Clare Kent* and *Thomas C. Cochran,* for appellee.

OPINION BY MR. JUSTICE BROWN, February 14, 1910:

Insanity was the sole defense of the appellant, who, on his trial in the court below, was convicted of murder of the first degree.  The spectators in the crowded court room in which he was tried were hostile to him, frequently exhibiting their hostility and their disapproval of the defense made for him by his counsel.  Most unseemly scenes were enacted where respectful silence on the part of the audience ought to have prevailed, in view of the solemnity of what was transpiring before them.  Though outside the court room exhibitions of hostility towards the prisoner may have been beyond the control of the court, within the court room such exhibitions were under its control and should not have been tolerated for a moment. The trial judge, of his own motion, should have suppressed the first outburst and not permitted the trial to proceed until an effort had been made to discover every offender for the purpose of punishing him for his indecency and palpable attempt to influence the jury in the very presence of the court; and, upon failure to discover the offenders, the court room should have been cleared of all mere spectators.

In the motion for a new trial it is averred that during the course of the trial there came frequently from the many spectators in the court room open, manifest and hostile demonstrations towards the defendant and in evident disapproval

of the nature and character of the defense made for him and of the conduct of his counsel and witnesses; that these demonstrations, so made in the presence of the court and jury, were for the evident purpose of influencing the conduct of the jury to the prejudice of the right of the defendant to a fair and impartial trial; and that, although there were many such demonstrations, they were not suppressed by the court, and not even a reprimand was given until they had been often repeated. As to these averments the trial judge says in his opinion overruling the motion for a new trial: "A mass of testimony was taken which tends to show that the defendant was surrounded by a hostile crowd of spectators during the trial, who gave unnumbered demonstrations of hostility to him and his defense, by hissing, sneering, catcalling, groans and murmurs of disapproval. Testimony similar in volume was taken which tends to disprove any such condition." As we must review the alleged abuse of the court's discretion in refusing to grant a new trial for the foregoing reasons assigned by counsel for the prisoner, we have read the depositions taken in connection with the motion for a new trial and regret to be compelled to conclude that the testimony taken in support of the motion not only tends to show, but actually does show, the existence of the deplorable condition stated by the trial judge; and, from the testimony on the part of the commonwealth in opposition to the motion, there are to be gathered repeated admissions corroborating the testimony of the witnesses for the defendant. But a single illustration of this need be given. The tipstaves, whose duty it was to preserve order in the court room, were called by the commonwealth, but even from them there came admissions of the gross misconduct complained of, one of them admitting that at a certain stage of the trial the noise of whistling, shouting and laughing was so great that it might have been heard out on the street. The trial judge, however, feeling that he was "endowed with a normal faculty of hearing," deemed it unnecessary to review the testimony and relied upon his own recollection that no great disorder had occurred during the trial on the part of the audience in exhibiting their hostility to the prisoner and their disapproval

of the defense of insanity.  He does admit, however, that "there was some disorder.  There were two occasions when part of the audience gave audible dissension from or disapproval of the defense of insanity. . . . The occasion of the first indecorum was when Mr. Thomas, counsel for the defendant, first announced the defense of insanity." This misconduct on the part of the audience, admitted to have taken place by the trial judge, was, as is gathered from the testimony, that, as counsel for the defense opened the case to the jury and stated that the defense would be insanity, there came at once "hissing and signs of disapproval from the entire audience." While the trial judge admits that this conduct was wholly improper and should not have been tolerated, he failed to even reprimand the audience.  The second admitted scene of disorder was when an expert was testifying that the prisoner was insane.  The audience sneered and snickered. On this occasion there was a reprimand from the court; but the audience remained, and later on there was another "regrettable occurrence"—termed by the court the Brockway incident—when, according to the court's finding, the spectators whistled, laughed, stamped their feet and clapped their hands.  This scene resulted from an answer given by a witness for the commonwealth to a question asked by one of the counsel for the defendant.

It is needless to comment further upon the scenes of disorder at the prisoner's trial than to say that the jury sat in judgment upon him in an atmosphere polluted by the breath of hostile public sentiment, which had no right to breathe in the court room.  The right of the prisoner was to be tried there decently and in order, as if there was no public sentiment against him, and the duty of the court was to see that he was so tried; but he was not.  A resentful and jeering audience treated his only defense with open contempt and ridicule, with the evident purpose of trying to influence the jury against him. Our imperative duty is to direct that he be tried again.  We have not been convinced of any other reversible error.  The thirty-first assignment is sustained and the judgment reversed with a venire facias de novo.