# Commonwealth *v.* Detweiler, Appellant.

*Criminal law—Murder—Defenses—Intoxication—Use of drug.*

1. The mere intoxication of a person charged with murder will not excuse or palliate his offense unless he was in such a state of intoxication as to be incapable of conceiving any intent. If he was, his offense is reduced to murder in the second degree.

2. Intoxication from the voluntary excessive use of opium or any other drug taken to gratify the appetite is considered in the law the same as intoxication from the voluntary use of liquors.

*Criminal law—Murder—Evidence—Accusation—Standing silent.*

3. In a murder trial a witness for the commonwealth may be permitted to testify that he said in the presence of the defendant, who was

standing within four feet of him, with the deceased's body lying before them, "that is something you ain't going to get away with." In such a case it is for the jury to say whether the defendant heard the remark, and also whether or not the remark was in the nature of an accusation, and what effect they would give to the standing silent of the defendant under the circumstances.

4. Where the trial judge in a colloquy between counsel and the court over a remark of the district attorney in his argument, suggests that anger or revenge over the loss of money might have been the motive for the killing, and there is evidence upon which the judge might have made such a suggestion in his charge, a verdict of guilty will not be set aside because of the suggestion made by the trial judge.

5. A verdict of guilty in a murder case will not be set aside where the district attorney permitted a woman to sit by his side during the trial whom he supposed to be the wife of the deceased and addressed as such, where it appears that the woman had lived with the deceased as his wife, had seen the killing, and was in court as a witness for the commonwealth.

Argued Oct. 3, 1910. Appeal, No. 1, May T., 1911, by defendant, from judgment of O. & T. Dauphin Co., Sept. T., 1909, No. 138, on verdict of guilty of murder of the first degree in case of Commonwealth v. Wells W. Detweiler. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Indictment for murder. Before Kunkel, P. J.

The facts appear in the opinion of the Supreme Court.

At the trial Leon G. Landis, a witness for the commonwealth, was asked this question:

"Q. State, please, what conversation, if any, you heard pass between the officer and Detweiler at that time, what Detweiler said? A. I heard Detweiler say something about: 'You ain't got no business in here, you ain't no member here.' That is all I heard him say. Q. Did you see Dwyer there? A. I seen him there laying on the floor, yes, sir. Q. What, if anything, did you say to Detweiler at that time? A. I said: 'That is something you ain't going to get away with.' Q. What did he say? A. He didn't say nothing."

Mr. Fox: If the court please, we ask that that be stricken out.  How is that evidence?

The Court: With Dwyer's body lying in front of them both?  We think it is evidence with whatever weight may be attached to it.

Mr. Fox: If the court please, we ask that that be stricken out.

The Court: "Q. Did Detweiler hear this remark? A. He was standing there—he was very stupid—with the officer.  Q. Do you know whether he heard it or not? A. I don't know whether he heard it or not.  He didn't say nothing, anyhow. . . ."

The Court: "Q. How near to Detweiler were you, when you asked him whether he shot him?  A. Why, I was standing right in front of him.  Q. Was he looking at you?  A. His eyes was about half cocked.  Q. You can't tell whether he heard you or not?  A. No, sir; he didn't say nothing back anyway."

The Court: We think we will admit this evidence and give you an exception; the weight to be attached to it is for the jury.  We cannot determine in advance that the defendant did not understand what was being said to him. [5]

Mr. Weiss: Your honor, please, I ask the question and the answer of the witness, to your honor's question, whether Detweiler heard him or not, the answer: " He appeared to be stupid," be stricken from the record as not responsive to your honor's question.

The Court: Strike that out.

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.  The prisoner appealed.

*Errors assigned* were (5) rulings on evidence, quoting the bill of exceptions, and various rulings on evidence sufficiently set forth in the opinion of the Supreme Court.

*John E. Fox*, with him *E. E. Beidleman* and *Frank E.*

*Ziegler*, for appellant, cited as to the effect of drugs: Jones v. Com., 75 Pa. 403.

Cited as to standing silent: Moore v. Smith, 14 S. & R. 388; Com. v. Kenney, 53 Mass. 235; Com. v. Johnson, 213 Pa. 607.

Cited as to the conduct of the supposed widow of the deceased: Com. v. Hoover, 227 Pa. 116.

*John Fox Weiss*, district attorney, with him *W. H. Musser* and *M. E. Stroup*, assistant district attorneys, for appellee.—Intoxication is no excuse for crime: Jones v. Com., 75 Pa. 403; Com. v. McGowan, 189 Pa. 641; Com. v. Wireback, 190 Pa. 138; Com. v. Hallowell, 223 Pa. 494; Com. v. Renzo, 216 Pa. 147.

Silence is assent as well as consent, and may, where a direct and specific accusation of crime is made, be regarded under some circumstances as a quasi confession: O'Mara v. Com., 75 Pa. 424.

OPINION BY MR. JUSTICE MOSCHZISKER, November 2, 1910:

The defendant was convicted of murder of the first degree. The crime occurred at a clubhouse where the defendant and the deceased had been gambling. The defendant went to this house shortly after ten o'clock on the night prior to the morning of the killing, and the gambling commenced at midnight and continued until about seven o'clock in the morning, when the game was broken up by a dispute over the money. The defendant then left the clubhouse and went to a pawn shop where he purchased a thirty-eight caliber revolver and requested the clerk in the shop to load it. He returned to the club, inquired for the deceased, and when he found him immediately fired two shots in rapid succession, both of which entered the body of his victim, causing death within a short time. The defendant admitted the facts as outlined down to the time of the card game, but claimed that his mind was a blank from that time until his arrest and removal to the station

house.  He testified that he had been smoking and taking opium for almost a week; that at about ten o'clock on the evening prior to the killing he had taken a pill the size of a pea, and during the course of the night he had drunk a large quantity of beer.

It is contended that the court below erred in refusing to charge the jury that they were bound to acquit the defendant if they believed that he was in such a condition of mind from the joint use of opium and alcohol as to be unable to reason or to distinguish right from wrong at the time of the commission of the crime; and that further error was committed in the refusal to affirm the defendant's points to the effect that a disordered mental condition superinduced by the excessive use of a drug such as opium was considered differently in the law from a similar condition due to voluntary intoxication from liquors.

In the words of the trial judge, "There was no evidence, nor was it contended that the defendant was permanently or continuously deranged in mind, or, in other words, insane, but the defense was that by the voluntary use of beer and opium he was temporarily rendered incapable of deliberating and premeditating and of forming a conscious purpose to kill."

The law as settled in our state is, "The mere intoxication of the defendant will not excuse or palliate his offense unless he was in such a state of intoxication as to be incapable of conceiving any intent.  If he was, his grade of offense is reduced to murder in the second degree:" Com. v. Cleary, 135 Pa. 64.  When that case was before us the second time the following instruction was assigned for error: "If, however, you find that the intoxication of the prisoner was so great as to render it impossible for him to form the willful, deliberate and premeditated intent to take the life of the deceased, the law reduces the grade of the homicide from murder in the first to murder in the second degree, and your verdict should be murder in the second degree;" and in affirming

we said that the instruction was "entirely accurate and as favorable to the prisoner as he had any right to expect:" Com. v. Cleary, 148 Pa. 26. In Com. v. McGowan, 189 Pa. 641, we said: "But even though there is intoxication there may be deliberation and premeditation, and if the evidence shows these elements of murder in the first degree to have been present, the intoxication will not reduce the murder to the second degree." Also see Com. v. West, 204 Pa. 68, and Com. v. Dudash, 204 Pa. 124. Finally, in Com. v. Eyler, 217 Pa. 512, Chief Justice MITCHELL states: "The defense was intoxication. . . . The only issue, therefore, was the degree of guilt, and that depended on the degree of intoxication." These authorities fully sustain the trial judge's instructions upon the law and his refusal to charge as requested by the defense. Intoxication from the voluntary excessive use of opium or any other drug taken to gratify the appetite is considered in the law the same as intoxication from the voluntary use of liquors.

In addition to a witness who was present at and described the actual shooting, there was testimony of several other witnesses which would warrant a finding that the defendant knew what he was about when he left the clubhouse and when he purchased the revolver, and that apparently he was in his right senses sufficiently to appreciate the nature of his acts immediately before and after the shooting. Despite his intoxication, the jury evidently believed that at the time of the killing he was capable of forming and executing a deliberate and premeditated intent to take life. We are unable to say that such a conclusion cannot be founded justifiably upon the evidence, and consequently the defendant's contention that the crime could not rise higher than murder of the second degree cannot be sustained. The case of Jones v. Com., 75 Pa. 403, relied upon by the defendant, is so plainly distinguishable on its facts as not in any sense to rule the present case.

We see no merit in the remaining assignments of error.

The remark made by the witness in the presence of the defendant, with the deceased's body lying before them, "that is something you ain't going to get away with," evidently referred to the killing of the deceased, and there was no error in its admission. Although the witness could not tell positively whether or not the defendant heard the remark, yet as he was within four feet of him at the time he uttered it, the question was for the jury; and it was also for the jury to say whether or not the remark was in the nature of an accusation, and what effect they would give to the defendant's silence under the circumstances. As to the answer given by this witness, "he was very stupid," when asked if the defendant had not heard the remark, it is a matter of opinion whether or not the reply was responsive to the interrogation, and the trial judge considered that it was not. However this may be viewed, we are satisfied that no real harm was done to the defendant by the ruling in question.

It is complained that the trial judge in the presence of the jury suggested that it might be argued that anger or revenge over the loss of money formed the motive for the killing. It appears that the district attorney was contending that possibly robbery was the motive, and when it was objected by counsel for the defendant that there was no evidence to support such an argument, a colloquy occurred between counsel and the court during the course of which the suggestion was made of which the defendant now complains. There was evidence upon which to base the thought expressed by the trial judge; it would not have been wrong for him to have made the suggestion to the jury in reviewing the evidence, and there was nothing in the manner of, or the circumstances surrounding, its utterance that would constitute reversible error.

The fact that one of the witnesses testified that at the time of the killing she was the wife of the deceased, when in truth she was not, and that this witness occupied a seat beside the district attorney during the course of the

trial, does not move us to a reversal. This woman had been living in the relation of a wife with the man whom she called her husband, and it is admitted that the district attorney did not know that she was not the widow of the deceased. The fact that the witness said that the deceased was her husband might well have been considered in passing upon her credibility, but as she was an eyewitness to the killing which she described, and as this was not disputed but practically admitted at the trial, any attack upon her credibility would have been of no material avail to the defense. There is nothing upon the record to support the contention of the appellant that the presence of this witness beside the district attorney brings the case within the category of Com. v. Hoover, 227 Pa. 116, and the authorities there cited.

A careful consideration of the whole case fails to disclose any reversible error. The assignments are all overruled, the judgment is affirmed, and the record is remitted for the purpose of execution.