Commonwealth *v.* Ingram, Appellant.

Argued January 8, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Harold Cramer*, with him *Alexander Brodsky*, and *Mesirov, Gelman, Jaffe & Levin*, for appellant.

*Michael M. Baylson*, Assistant District Attorney, with him *James D. Crawford*, Assistant District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1970:

On the evening of April 24, 1967, at approximately 8:30 P.M., Huriel Hildreth, the deceased, and Eugene Butler entered Margie's Bar at Second Street and Allegheny Avenue, in the City of Philadelphia. According to the testimony of Butler, an *eyewitness* to the homicide, they entered the bar so Hildreth could make a long-distance telephone call. The telephone was located in the rear of the bar, adjacent to a pool table where defendant-appellant Ingram and others were playing

pool. Hildreth was making his telephone call when appellant requested him to move because Hildreth was blocking appellant from taking his next shot. Hildreth refused. Appellant walked over to the bar, grabbed a beer bottle, broke it, came back, and with its jagged edges struck Hildreth on the side of his face, causing him to fall off the chair in which he was seated. Appellant went back to the bar and broke another beer bottle and returned and struck and slashed the other side of Hildreth's face while he was still on the floor. Appellant returned to the bar a third time and broke a third bottle, and was about to resume his attack on Hildreth, but was stopped by the bartender and other patrons.

Butler was finally able to get Hildreth to his feet and immediately took him to the hospital. Hildreth died in the hospital that morning at 5:00 A.M. At the autopsy, the Commonwealth proved that death was caused by the severing of Hildreth's jugular vein by a jagged instrument.

The jury returned a verdict of guilty of murder in the second degree. Appellant then filed post-trial motions for a new trial and in arrest of judgment. The lower Court denied these motions and sentenced appellant to a term of not less than five years nor more than fifteen years. From the judgment of sentence, defendant took this appeal.

### Motion for a New Trial

Appellant raises two issues as grounds for a new trial: (1) whether it was error for the lower Court not to charge the jury that it could consider the degree of appellant's *voluntary intoxication* on the question of whether he had the requisite state of mind to have the legal *malice* which is necessary for first- or second-degree murder, and, if not, whether he could be guilty of voluntary or involuntary manslaughter; and (2)

whether the voir dire rule or doctrine enunciated in *Witherspoon v. Illinois,* 391 U.S. 510, is applicable when appellant was sentenced to a term of years or life imprisonment and *not* to death.

Appellant and other witnesses testified that he (the appellant) was intoxicated* and had been drinking for almost four hours prior to his attacks on Hildreth. Appellant's testimony disclosed a clear recollection of all his actions and activities both before and after he slashed Hildreth with the broken bottles, but he said he had no recollection of breaking any bottle or of attacking the deceased.*

Appellant bases his requested charge (1) on the testimony of himself and several other witnesses that he was intoxicated, (2) also the testimony of Bernard Cowitz, M.D., a psychoanalyst, and (3) on a drastic change in the long-established law of Pennsylvania with respect to voluntary intoxication.

Dr. Cowitz testified that "as a result of alcohol ingest, very probably and very likely he [appellant] had no recollection of this incident," and that "there was a very definite possibility that at the time of this alleged offense that Mr. Ingram was not aware of his actions, as the result of the ingestion of alcohol." On the basis of the above-mentioned evidence, appellant requested a charge that would allow the jury (1) to consider whether his voluntary intoxication rendered him incapable of having the *requisite malice for either* first- or second-degree murder, and (2) to consider that the degree of his intoxication could reduce the killing to voluntary manslaughter. He argues that if the degree of intoxication can reduce a killing from murder in the first degree to murder in the second degree, it

---

* It is interesting to note that appellant had just won three games of pool and was aware of the fact that Hildreth occupied the spot from which he could make his best shot.

can and should be legally adequate to reduce the killing to voluntary manslaughter.* For the reasons hereinafter stated, we disagree.

In order to consider and refute appellant's contentions, we believe it would be helpful and wise to first consider what is murder, what is voluntary manslaughter and what effect, if any, voluntary intoxication has on each of said crimes.

The law defining murder and, except in felony murders,** its essential element of malice, as well as (a) voluntary manslaughter and (b) the legal effect of intoxication, is well settled in this Commonwealth.

In *Commonwealth v. Commander*, 436 Pa. 532, 260 A. 2d 773, this Court said (pages 536-537): "Murder . . . is . . . an unlawful killing of another [human being] with malice aforethought express or implied. . .

" ' "Malice express or implied is the criterion and absolutely essential ingredient of murder. Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. Legal malice may be inferred and found from the attending circumstances. [Accord: Common-

---

* If appellant's contentions are sound, it would follow arguably and possibly logically that voluntary intoxication, like insanity, would absolve him of murder and of voluntary, as well as involuntary, manslaughter.

** The only exception to this is the statutorily enumerated felony murder doctrine which mandates murder in the first degree: "Where, however, a murder is committed in the perpetration of a robbery or a burglary [or other statutorily enumerated felonies] it is, irrespective of any question of intent, murder in the first degree, and therefore the fact that this defendant may have been drinking to excess was of no legal significance as bearing upon the degree of his crime: Commonwealth v. Wooding, 355 Pa. 555, 557, 50 A. 2d 328, 329." *Commonwealth v. Simmons*, 361 Pa. 391, 404, 65 A. 2d 353, cert. den., 338 U.S. 862.

wealth v. Chermansky, 430 Pa. 170, 242 A. 2d 237; Commonwealth v. Lawrence, 428 Pa. 188, 236 A. 2d 768; Commonwealth v. Carroll, 412 Pa. 525, 194 A. 2d 911.].''''  See also, *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A. 2d 108.

In *Commonwealth v. Walters,* 431 Pa. 74, 244 A. 2d 757, a *unanimous* Court said (pages 82-83) : "The law on both voluntary manslaughter and intoxication as a defense to murder is clear.  In Commonwealth v. Paese, 220 Pa. 371, 373, 69 Atl. 891, 892 (1908), we defined voluntary manslaughter quite explicitly.  'To reduce an intentional blow, stroke or wounding, resulting in death, to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion, without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed.  If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder: Com. v. Drum, 58 Pa. 9 (17.)'  This explanation retains vitality today.  See Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540 (1951) ; Commonwealth v. Cargill, 357 Pa. 510, 55 A. 2d 373 (1947).  The evidence in the present case furnishes no real proof whatsoever that [appellant] acted in the heat of passion. . . .

"On the other hand, there was considerable evidence that appellant was seriously intoxicated at the time of the stabbing.  In fact, the trial judge at sentencing stated specifically that this was the reason he agreed to accept the Commonwealth's certification that the crime was murder in the second degree.  The law is quite clear that *intoxication can lower the degree of guilt,** but it remains *murder.*** 'Intoxication suffi-

---

* Italics, ours.
** Italics in *Commonwealth v. Walters* Opinion.

cient to deprive the mind of power to form a design with deliberation and premeditation, and to properly judge the legitimate consequences of an act, will reduce a killing from murder in the first degree to murder in the second degree.' Commonwealth v. McCausland, 348 Pa. 275, 277, 35 A. 2d 70, 71 (1944). We have not found any cases in Pennsylvania where intoxication, by itself, was sufficient to lower a homicide to voluntary manslaughter." See also, *Commonwealth v. Brown*, 436 Pa. 423, 427, 260 A. 2d 742.

Appellant makes a frontal assault on one of the most basic bulwarks of our law. In *Commonwealth v. Reid*, 432 Pa. 319, 247 A. 2d 783, this Court said (page 322) : "Generally speaking, voluntary drunkenness neither exonerates nor excuses a person for his criminal acts. Commonwealth v. Simmons, 361 Pa. 391, 65 A. 2d 353 (1949), cert. denied, 338 U.S. 862, 70 S. Ct. 96 (1949). However, where the charge is felonious homicide, intoxication which is so great as to make the accused incapable of forming a wilful, deliberate, and premeditated design to kill, or incapable of judging his acts and their consequences, may serve to reduce the crime of murder from the first to the second degree. Commonwealth v. Simmons, supra. See also Commonwealth v. Walters, 431 Pa. 74, 244 A. 2d 757 (1968)." This has been the well-established and frequently reaffirmed law of Pennsylvania, and we believe there is no reason or justification for any change. See *Commonwealth v. Brown*, 436 Pa., supra; *Commonwealth v. Brabham*, 433 Pa. 491, 494, 252 A. 2d 378; *Commonwealth v. Walters*, 431 Pa. 74, 83, 244 A. 2d 757; *Commonwealth v. Detweiler*, 229 Pa. 304, 308-309, 78 Atl. 271; *Commonwealth v. Cleary*, 135 Pa. 64, 85, 19 Atl. 1017; *Jones v. Commonwealth*, 75 Pa. 403.

Our well-reasoned policy and well-established law have been adopted or followed by the overwhelming

majority of States which continue to maintain the same policy. 8 A.L.R. 3d 1,236, Voluntary Intoxication—Defense (1966); Hall, Intoxication and Criminal Responsibility, 57 Harv. L. Rev. 1045 (1944).*

Moreover, the facts in the instant case create an important factual presumption of malice. Appellant attacked a vital part of Hildreth's body (face and throat) with a deadly weapon (jagged edges of broken beer bottles), thereby raising a factual presumption that the homicide was both intentional and malicious. As this Court recently said in *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108 (pages 79-80) : "It is true that malice is an absolutely essential ingredient of murder (cases supra). *Legal malice*** may be inferred and found from the attending circumstances, and, like the specific intent to kill, may be inferred from the intentional use, without legal excuse or legal justification, of a deadly weapon on a vital part of another human body: Commonwealth v. Troup, 302 Pa. 246, 252, 253, 153 Atl. 337; Commonwealth v. Green, 294 Pa. 573, 581, 144 Atl. 743; Commonwealth v. Wucherer, 351 Pa. 305, 311, 312, 41 A. 2d 574. Cf. also, Commonwealth v. Ewing, 439 Pa. 88, 264 A. 2d 661; Commonwealth v. Drum, 58 Pa. 9 (1868)."

Appellant seeks to have the evidence of his voluntary intoxication (which the jury does not have to believe—see *Commonwealth v. Winebrenner*, 439 Pa., supra; *Commonwealth v. Kirkland*, 413 Pa. 48, 195 A. 2d

---

* We note that there are some States—for instance, California and Arizona—which allow intoxication to negate malice. In these States, there are *statutes, legislatively enacted*, which direct the jury to consider intoxication affecting "any particular purpose, motive or intent" necessary for crime. Section 22 of California Penal Code, and Ariz. Rev. Stat. 13-132. These jurisdictions have concepts and classifications of homicide wholly inapposite to that which we have in Pennsylvania.

** Italics in *Commonwealth v. Winebrenner* Opinion.

338; *Commonwealth v. Melton,* 406 Pa. 343, 178 A. 2d 728; *Commonwealth v. Tyrrell,* 405 Pa. 210, 174 A. 2d 852; *Commonwealth v. Ballem,* 386 Pa. 20, 123 A. 2d 728; *Commonwealth v. Donough,* 377 Pa. 46, 50, 103 A. 2d 694; *Commonwealth v. Homeyer,* 373 Pa. 150, 153, 94 A. 2d 743; *Commonwealth v. Phillips,* 372 Pa. 223, 93 A. 2d 455)—to be of such a nature and degree that the jury could consider it to *completely rebut* this presumption of malice. The practical effect of this would be to allow an intoxicated man to feloniously take the life of another man with a gun, knife or any other dangerous weapon, including a broken beer bottle, and be convicted only of voluntary manslaughter (or indeed found not guilty of any crime), while the same man with one drink or a few drinks, or completely sober, would be convicted of murder. As was so well and wisely said in *State v. Arsenault,* 152 Me. 121, 124 A. 2d 741, 746: "The Court is unanimous in its opinion that the rule regarding the defense of insanity should never be extended to apply to voluntary intoxication in a murder case. It would not only open wide the door to defenses built on frauds and perjuries, but would build a broad, easy turnpike for escape. All that the crafty criminal would require for a well-planned murder . . . would be a revolver in one hand to commit the deed, and a quart of intoxicating liquor in the other with which to build his excusable defense."*

---

* The Model Penal Code, generally considered as a *liberal* statement of criminal law and theory, also clearly rejected intoxication as a defense for consideration by the jury if the defendant had committed a homicide with "recklessness under circumstances manifesting extreme indifference to the value of human life." Sections 2.08(2), 210.2(1)(b). We note in passing that the Model Penal Code—unlike the well-established law of Pennsylvania—does not use the generic term "malice" in its definition of murder, but substitutes "recklessness under circumstances manifesting an extreme indifference to the value of human life."

We see no reason or logic, or realistic principles of law,** to subject a man who *voluntarily* becomes intoxicated to any different standards of criminal responsibility for second-degree murder or voluntary manslaughter than a sober man.

We further note that the Judge's charge was an accurate statement of the law and we find no reversible error in the denial of defendant-appellant's motion for a new trial.

## Jury Exclusion—Witherspoon v. Illinois

The second ground upon which the appellant relies in his motion for a new trial is the alleged systematic exclusion from the trial jury of all persons whose conscientious scruples opposed or militated against the imposition of the death penalty. He contends this is contrary to *Witherspoon v. Illinois,* 391 U.S., supra, and necessitates a new trial. *The United States Supreme Court has expressly refused to apply the Witherspoon rule to cases in which a penalty less than death had been imposed. Bumper v. North Carolina,* 391 U.S. 543. See also, *Commonwealth v. Wilson,* 431 Pa. 21, 244 A. 2d 734. Since appellant was not convicted of first-degree murder, and under the jury's verdict of murder in the second degree, a death sentence was not and could not have been legally imposed, *Bumper v. North Carolina* governs and *Witherspoon v. Illinois* is inapplicable to the instant case.

## Motion in Arrest of Judgment

In *Commonwealth v. Winebrenner,* 439 Pa., supra, the Court said (pages 77-78): "In Commonwealth v. Te-

---

** The principal reason for the criminal law was originally "punishment"; in the last hundred years or so, the principal reason and objective are "the protection of Society."

renda, 433 Pa., supra, the Court said (page 523) : 'In Commonwealth v. Tabb, 417 Pa. 13, 207 A. 2d 884, the Court said (page 16) : "In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record*.\* All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. See, Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65 (1959), and Commonwealth v. Wright, 383 Pa. 532, 119 A. 2d 492 (1956). . . ." ' "

Considering the testimony of the eyewitness and all of the other relevant evidence, as well as all reasonable inferences therefrom, in the light most favorable to the Commonwealth, there is undoubtedly sufficient evidence to support a finding or verdict that appellant maliciously attacked and killed Hildreth with a dangerous weapon and was guilty of murder in the second degree.

Judgment of sentence affirmed.

Mr. Justice JONES concurs in the result.

---

\* Italics in *Commonwealth v. Tabb* Opinion.