## Commonwealth *v.* Tarver, Appellant.

Argued May 26, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*John A. Roe,* and *Middleton, Roe and Etzweiler,* for appellant.

*James G. Morgan, Jr.,* Deputy District Attorney, with him *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, December 20, 1971:

The appellant, Foster Lee Tarver, entered a general plea of guilty to murder in Dauphin County. After an evidentiary hearing before a three-judge court, he was adjudged guilty of murder in the first degree and was sentenced to death. Upon further reflection, the court later ordered an additional evidentiary hearing limited to the issue of penalty. Following this hearing, a new sentence was imposed fixing Tarver's punishment at life imprisonment. This appeal then followed.

The following facts established by the testimony of the witnesses for the Commonwealth at the degree of guilt adjudication hearing were never disputed below and are not questioned here.

On the morning of December 2, 1968, Tarver, acting in concert with Samuel Barlow, Jr., and Sharon Margarett Wiggins, executed an armed robbery of the Market Street Branch of the Dauphin Deposit Trust Company in Harrisburg. During the robbery, a customer in the bank was shot both by Tarver and Wiggins. Six bullets entered his body causing instant death. Following the robbery, the felons fled from the scene in a Chevrolet Sedan which they stole on the same morning from a parking lot in Harrisburg. About two blocks from the bank, the three abandoned the Chevrolet Sedan and entered a Buick Sedan which they had previously stolen in Pittsburgh and parked in this pre-arranged location in Harrisburg to aid in their flight from arrest. While fleeing in the Buick, the felons

were apprehended by the police[1] and the money stolen from the bank totaling Seventy Thousand ($70,000) Dollars was recovered. The major portion of the money was found in the Buick Sedan and about Forty-Five Hundred ($4500) Dollars was found in and around the abandoned Chevrolet Sedan.

During the hearing to determine the degree of guilt, Tarver testified and did not deny his participation in the commission of the robbery. Neither did he deny shooting the victim of the homicide. However, he stated that for some time before the day involved he became accustomed to consuming quantities of cough syrups, known as Robitussin and Romilar, sniffing glue and smoking marijuana, and that he had done this a short time before the bank robbery, here involved; that as a result he was "high" when he entered the bank and his head was "spinning"; that he had no intention of robbing the bank, and could not remember committing the robbery or shooting anyone during its occurrence. However, questioning elicited that he remembered stealing the Buick in Pittsburgh; stealing the Chevrolet a short time before the robbery in Harrisburg; parking the Buick under a bridge a short distance from the bank; "thinking" about robbing the bank; driving to the bank in the Chevrolet and having three guns, two .32 Calibre revolvers and one .22 Caliber revolver in his coat pocket at the time; and, standing on a counter while in the bank.

A physician-psychiatrist testified that he had "interviewed" Tarver on January 29, 1969, while he was

---

[1] The police were alerted to the robbery by the ringing of a burglary alarm. Two police officers arrived at the bank as the felons were coming out the front door. The felons ignoring a warning to halt, entered the Chevrolet Sedan and raced away at a great rate of speed with Barlow at the wheel. The police followed in pursuit and succeeded in capturing the felons after the Buick suffered a collision with another vehicle.

confined in jail; that based on what Tarver told him, particularly about the effects he suffered from consuming the cough syrups and sniffing glue a short time before the robbery, plus a study of the report of a pathologist who had examined Tarver and made certain tests in a hospital following the robbery, it was his conclusion that Tarver was under the influence of "drugs", and his "consciousness" was "disturbed" and his judgment "impaired" at the time of the robbery. He explained that Robitussin contains a "high codeine content" and either this or Romilar, if consumed in sufficient quantity, would produce an intoxication similar to that of alcohol resulting in a release of the person's inhibitions, a loss of memory and an impairment of his "intention to do any kind of act."

The Commonwealth offered no testimony to rebut that of the medical witness.

That Tarver's plea of guilt was entered voluntarily, knowingly and intelligently is not questioned. Nor could such a claim be made with any semblance of merit, since the record of the plea proceedings demonstrates that before accepting the plea, the trial court questioned Tarver personally very carefully and thoroughly to make sure and to establish beyond doubt that the plea of guilt was Tarver's own free act, and that he fully understood the impact and consequences thereof. But, it is argued that in view of the uncontradicted testimony introduced by the defense as to Tarver's mental state at the time the crimes were committed, the court below erred in finding him guilty of more than murder in the second degree. In support of this position, it is asserted that the adjudication of guilt of murder in the first degree was premised on the trial court's ruling that the felony-murder rule applied.[2]

---

[2] Under the felony-murder rule, if one or more persons engage in the commission of, or in an attempt to commit a robbery, and during the perpetration thereof, a person is killed by one of the

And it is maintained that the felony-murder rule is inapplicable since the testimony established that Tarver was so intoxicated from narcotics at the time the robbery was committed that he did not have the mental capacity to possess the requisite felonious intent;[3] hence there was no felony. If this premise is accepted, defendant would have us view this case as felonious homicide, and since he was unable to form the necessary specific intent to kill, the offense should not be *raised* to murder in the first degree, but should remain at murder in the second degree.

Assuming arguendo, that the testimony of the defense in this case was sufficient to establish that Tarver lacked the necessary felonious intent to commit the robbery, this without more, does not vitiate the lower court's finding of murder in the first degree. For decades this Court has held that *voluntary* intoxication, no matter how gross or long continued, neither exonerates nor excuses a person from his criminal acts. *Commonwealth v. Ingram,* 440 Pa. 239, 270 A. 2d 190 (1970) ; *Commonwealth v. Reid,* 432 Pa. 319, 247 A. 2d 783 (1968) ; *Commonwealth v. Walters,* 431 Pa. 74, 244 A. 2d 757 (1968) ; *Commonwealth v. Eyler,* 217 Pa. 512, 66 A. 746 (1907) ; *Commonwealth v. Cleary,* 135 Pa. 64, 19 A. 1017 (1890) ; *Jones v. Commonwealth,* 75 Pa. 403 (1874).[4]

---

felons, all are guilty of murder in the first degree. Cf. *Commonwealth v. Williams,* 443 Pa. 85, 277 A. 2d 781 (1971).

While the court did not say so in its adjudication, it is clear from the court's questions to Tarver before the guilty plea was accepted that it was of the opinion the felony-murder rule applied. Moreover, the Commonwealth does not dispute that the court's adjudication was based on this rule.

[3] One of the two important elements of the crime of robbery is a felonious intent. Cf. *Commonwealth v. Simpson,* 436 Pa. 459, 260 A. 2d 751 (1970).

[4] While the above authorities involved intoxication resulting from consumption of alcoholic beverages, in our view, they are rele-

However, it is urged that Tarver is not asking to be exonerated or excused from culpability, but merely stating his guilt is not murder in the first degree because of his lack of felonious intent. However, if this position is sustained, it inexorably follows that Tarver is being exonerated and excused from any guilt in connection with his participation in the robbery.

If the charge is *felonious* homicide, intoxication, which is so great as to render the accused incapable of forming a wilful, deliberate and premeditated design to kill or incapable of judging his acts and their consequences, may properly influence a finding by the trial court that no specific intent to kill existed, and hence to conclude the killing was murder in the second degree. See *Commonwealth v. Ingram,* supra, and *Commonwealth v. Jones,* 355 Pa. 522, 50 A. 2d 317 (1947). Although it is clear that this Court has employed the aforementioned rule to *lower the degree of guilt* within a crime, the crime still remains at murder. This Court has never extended the rule to lower murder in the second degree to voluntary manslaughter, nor has it applied this principle to any other crime outside of *felonious* homicide. Thus, exemplifying the fact that the rule has never been applied where its effect would change the nature of the crime, we have always limited its application to changing degrees within a crime. See *Commonwealth v. Ingram,* supra; *Commonwealth v. Brown,* 436 Pa. 423, 260 A. 2d 742 (1970); *Commonwealth v. Walters,* 431 Pa. 74, 244 A.

---

vant in this case, particularly, since even under Tarver's testimony it is clear that the narcotics were taken voluntarily, without compulsion and with a complete awareness of the resulting effects. See *Commonwealth v. Detweiler,* 229 Pa. 304, 309, 78 A. 271, 272 (1910), wherein it is stated: "Intoxication from the voluntary excessive use of opium or any other drug taken to gratify the appetite is considered in the law the same as intoxication from the voluntary use of liquors."

240

2d 757 (1968); *Commonwealth v. McCausland,* 348 Pa. 275, 35 A. 2d 70 (1944); *Commonwealth v. Walker,* 283 Pa. 468, 129 A. 453 (1925).[5]  Since there are no analogous degrees of robbery, the principle has no application and defendant's acts are a felony, notwithstanding his alleged intoxication.

It has long been the law in Pennsylvania that where a killing is committed by one of the participants in the perpetration of, or in an attempt to commit, a robbery, i.e., felony, it is murder in the first degree, even if a felonious intent is absent.  Hence, the fact that the accused may have been intoxicated at the time has no bearing on the degree of guilt.  See *Commonwealth v. Ingram,* supra; *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353 (1949), *cert. denied,* 338 U.S. 862, 70 S. Ct. 96 (1949); and, *Commonwealth v. Wooding,* 355 Pa. 555, 50 A. 2d 328 (1947).

Further, even if it is accepted that Tarver was "high" from narcotics at the time involved, the record is ample to establish that his claim of lack of felonious intent lacked credibility.  Before, during and after the robbery, the actions of the participants manifested a carefully thought-out and well coordinated plan, com-

---

[5] In *Walker,* supra, it was stated: " ' "The mere intoxication of the defendant will not excuse or palliate his offense unless he was in such a state of intoxication as to be incapable of conceiving any intent. If he was, his *grade* of offense is reduced to murder in the second degree." ' " *Id.* at 474, 129 A. at 455, citing *Commonwealth v. Detweiler,* 229 Pa. 304, 308, 78 A. 271, 272 (1910).  See also *Commonwealth v. Eyler,* 217 Pa. 512, 514, 66 A. 746 (1907), wherein it was stated: "The defense was intoxication . . . . The only issue, therefore, was the degree of guilt, and that depended on the degree of intoxication. . . . that is not an excuse for crime, but when it is of such degree as to render the prisoner incapable of deliberation or premeditation, or even of the formation of a specific intent, it may reduce the *grade* of the offense." (Emphasis throughout supplied.)

pletely negating Tarver's claim of an absence of a conscious intent to rob.

Judgment affirmed.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS AND MR. JUSTICE POMEROY:

We concur in the result for the reason that the record establishes that the trial court did not err in rejecting appellant's claim of lack of felonious intent.