Commonwealth *v.* Fostar, Appellant.

Argued November 21, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

218

reargument refused April 15, 1974.

*Clarence F. McBride,* with him *Marker and McBride,* for appellant.

*John F. Dent,* Assistant District Attorney, with him *John N. Scales,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, January 24, 1974:

During the early morning hours of February 28, 1970, the flame of life within the body of Ms. Harriet Susanna Thomas was extinguished after an assault by an intruder while she was watching television in the shelter of her home. The appellant, John Michael Fostar, was arrested and indicted for murder and burglary as a result of this incident and was subsequently convicted of both charges before a jury. Post-trial motions were filed, argued and dismissed. A sentence of imprisonment for life was imposed upon the murder indictment and the execution of sentence was suspended on the burglary bill. The appeal from the conviction on the murder charge was taken directly to this Court and the appeal from the burglary conviction was certified to this Court after first having been lodged in the

Superior Court. The appeals have been consolidated and are now ripe for decision.

Appellant first contends that the evidence was not sufficient to sustain the guilty verdicts on either indictments. We have stated on many occasions that the test of the sufficiency of the evidence is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Paquette,* 451 Pa. 250, 253, 301 A. 2d 837 (1973); *Commonwealth v. Oates,* 448 Pa. 486, 489, 295 A. 2d 337 (1972). In passing upon such a motion, all evidence actually received, is to be considered without concern for the validity of the evidentiary rulings. *Commonwealth v. Crews,* 429 Pa. 16, 19, 239 A. 2d 350 (1968); *Commonwealth v. Tabb,* 417 Pa. 13, 207 A. 2d 884 (1965).

The testimony offered by the prosecution established that the deceased, a fifty-two year old married woman, was staying in her residence on the night in question with her six year old son, Mark, her daughter, Ruth, and her daughter-in-law, Gail. That evening she had decided to sleep in the living room to allow her to be near her young son who was ill at the time and sleeping on a cot in the dining room. The daughter and the daughter-in-law of the deceased testified that they were sleeping on the second floor of the home and that in the vicinity of 3 A.M. in the morning they were awakened by the screams of the deceased. Upon going downstairs, they both observed the appellant struggling with the deceased in the living room. The daughter solicited the aid of a neighbor who was then the chief of police. When he arrived he found the decedent on the living room floor unconscious with evident bruises. The deceased was rushed to the hospital where she was pronounced dead on arrival.

The defendant was observed leaving by the rear kitchen door by the daughter as she left by the front door to seek aid. An inspection of this kitchen door revealed a loose door jam which suggested that this was the means by which the intruder gained entry. A search of the area uncovered the defendant hiding in a building used as a "doghouse" to the rear of the Thomas home. Upon apprehension he stated to police officers, "I don't know why I did it. How is she?"[1]

An autopsy showed the victim had been subjected to a merciless beating and had sustained over twenty wounds about the face and trunk of the body. The cause of death was identified as a stab wound of the chest which caused a cardiac tamponade. The pathologist testified that the screwdriver found on the scene and identified as belonging to the appellant was the type of weapon capable of causing such a wound.

Investigation of the scene revealed mud prints on a pipe below a living room window and telephone wires which had been severed suggesting that before entry the assailant had peered surreptitiously into the room where the victim was lying on the divan clad only in night clothing. The pipe which contained the mud prints was within an arm's length of the telephone juncture box from which the wires had been torn, suggesting that after viewing his prey, the intruder disconnected the wires to prevent the victim from using the telephone as a means to solicit aid.

In establishing the presence of a specific intent to kill, Commonwealth is not required to depend upon proof by direct evidence but also may meet its burden by circumstantial evidence alone.

" 'The specific intent to kill which is necessary to constitute in a nonfelony murder, murder in the first

---

[1] There was never an issue of identification of the appellant. He was a neighbor of the Thomases and well known to the residents of the Thomas household.

degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom. . . .'" *Commonwealth v. Ahearn,* 421 Pa. 311, 318, 218 A. 2d 561 (1966) ; see also, *Commonwealth v. Tyrrell,* 405 Pa. 210, 174 A. 2d 852 (1961) ; *Commonwealth v. Moore,* 398 Pa. 198, 157 A. 2d 65 (1959) ; *Commonwealth v. Nelson,* 396 Pa. 359, 152 A. 2d 913 (1959).

The evidence of the Commonwealth, if believed, provided more than sufficient basis for the finding of a willful, deliberate and premeditated killing. This testimony also amply supports a verdict of first degree murder on a felony murder theory. The jury in this case was clearly warranted in finding a homicide committed in the perpetration of the crime of burglary.

There was also evidence that appellant was under the influence of alcohol and/or drugs due to his voluntary consumption of large quantities of alcoholic beverages and ingestion of pills prior to the incident. While we permit evidence of intoxication as relevant on the question of the capacity of the defendant to possess the specific intent required of a non-felony first degree murder, *Commonwealth v. Ingram,* 440 Pa. 239, 270 A. 2d 190 (1970) it is a matter which is properly left for decision by the finder of fact, who in this case and under these facts understandably resolved the issue adversely to appellant. We are completely satisfied that the proof offered by the Commonwealth was clearly sufficient to support the verdicts returned and therefore affirm the lower court's dismissal of the motion in arrest of judgment.

Numerous assignments of error have been asserted many of which are repetitious and all are without merit. A seriatim discussion can be avoided by a consideration of an erroneous basic assumption made by appellant upon which he predicates a number of his claims for relief. Appellant opines that under the indictments

in this case the Commonwealth was restricted in its proof of a felony-murder to establishing a burglary accompanied by a specific intent to kill. He argues that the indictment charging burglary requires a specific intent to kill and that this indictment precluded the Commonwealth from proving the existence of any other felony but the one encompassed within the burglary charge as a basis for a finding of felony-murder under the murder indictment.

The first error in this reasoning is the conclusion that the existence of the burglary affects the proof to be offered in support of the murder charge.

The Act of March 31, 1860, P. L. 427, §20, 19 P.S. §351 provides: "In any indictment for murder . . . it shall not be necessary to set forth the manner in which, or the means by which the death of the deceased was caused, but it shall be sufficient, in every indictment for murder, to charge that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased. . . ."

In *Commonwealth ex rel. Lagana v. Burke*, 372 Pa. 298, 93 A. 2d 478 (1953) we interpreted the above statutory provision as not requiring a murder indictment to specify the felony which forms the basis of the felony murder theory. "Thus, in a case like the one at bar the Commonwealth may not be precluded from proving that the murder with which a defendant stands charged was one committed during the perpetration of a robbery, even though robbery is not mentioned in the indictment." 372 Pa. at 300, 93 A. 2d at 479. See also, *Commonwealth v. Hainds*, 448 Pa. 67, 72, 292 A. 2d 337 (1972) ; *Commonwealth v. Lowry*, 374 Pa. 594, 98 A. 2d 733 (1953), cert. denied, 347 U.S. 914.

In *Commonwealth v. Bruno*, 316 Pa. 394, 175 A. 518 (1934) we held that even where a specific felony is set forth in the murder indictment it is treated as surplusage and does not restrict the Commonwealth's proof.

"The indictment alleged that he 'then and there feloniously, willfully and of malice aforethought did kill and murder the said Marion Myers'. Having properly charged him with murder, then, the Commonwealth was at the trial required to do no more than show the elements of murder . . . in order to invoke the penalty. . . . Accordingly, that portion of this indictment which sets forth arson may be considered surplusage and so may be disregarded." 316 Pa. at 399-400, 175 A. at 520.[2]

In light of this precedent we can find no basis for holding that a joint indictment for a specified felony should preclude the Commonwealth under the murder indictment from showing that the death resulted during the perpetration of or the attempt to perpetrate a felony other than the one for which he has been indicted.

Equally fallacious is appellant's contention that the burglary indictment requires a specific intent to kill. The indictment provides: "The Grand Jury of Westmoreland County by this indictment presents that, on or about Saturday, February 28th, 1970, in said County, John Michael Fostar did unlawfully, feloniously, wilfully and maliciously, in the night time, between the hours of 2:30 A.M. and 3:00 A.M. enter into a certain building, to wit: a two-story brown shingled dwelling, situate at 306 East Pittsburgh Street, Borough of Delmont, Westmoreland County, Pennsylvania, with intent to commit a felony therein, involving force and violence, namely, the crime of Murder upon one Harriet Susanna Thomas, said dwelling being the property of the said Harriet Susanna Thomas, all of which is against the

---

[2] Other jurisdictions have found that where unnecessary words are used to describe, limit or qualify words which need to be inserted to describe the offense, such unnecessary words must nevertheless be proved in order to sustain the verdict. *Mitchell v. Commonwealth*, 141 Va. 541, 127 SE 368 (1925), 41 Am. Jur. 2d Indictments and Informations §71-74 (1968).

peace and dignity of the Commonwealth of Pennsylvania."

The intent required under this charge is only that necessary to constitute common law murder. While a finding of a specific intent to kill distinguishes first degree from second degree murder, *Commonwealth v. Carroll,* 412 Pa. 525, 532, 194 A. 2d 911 (1963) ; *Commonwealth v. Ballem,* 386 Pa. 20, 123 A. 2d 728 (1956) ; *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125 (1950), the malice required by common law murder is inferred from the infliction of bodily harm dangerous to life. Although, as stated earlier we believe the evidence in fact supports an inference of a specific intent to kill, under the charges herein the Commonwealth was not required to meet that burden and satisfied the charge set forth in the indictment by establishing the general intent for murder. *Commonwealth v. Drum,* 58 Pa. 9, 15 (1868) ; *Commonwealth v. Dorazio,* supra.

Additionally, appellant urges that we find that the trial judge erred in his instructions to the jury that if the death occurred during the course of a felony, the fact of the appellant's intoxication would be immaterial. Reading the charge as a whole, as we must, *Commonwealth v. Stafford,* 451 Pa. 95, 301 A. 2d 600 (1973) ; *Commonwealth v. Hawkins,* 448 Pa. 206, 292 A. 2d 302 (1972), it is clear that this reference was directed to a specific intent to kill. It is basic law that even an accidental or unintentional death may be a felony murder. *Commonwealth v. Elliot,* 349 Pa. 488, 491, 37 A. 2d 582 (1944). Under such circumstances it is obvious that the question of intoxication would have no relevance. Voluntary intoxication does not provide an excuse or justification for criminal conduct under our law, *Commonwealth v. Ingram, supra; Commonwealth v. Reid,* 432 Pa. 319, 247 A. 2d 783 (1968) ; *Commonwealth v. Walters,* 431 Pa. 74, 244 A. 2d 757 (1968). In homicide cases its only relevance is to tend

to demonstrate that because of this condition the defendant was rendered incapable to form a specific intent necessary to establish a non-felony first degree murder.[3] *Commonwealth v. Ingram, supra* at 244-245; *Commonwealth v. Simmons,* 361 Pa. 391, 65 A. 2d 353 (1949), cert. denied, 338 U.S. 862 (1949). In this case, we are satisfied that the jury was adequately instructed and that no confusion resulted.

Lastly, the appellant argues that the showing of photographs of the deceased was highly inflammatory and, under the circumstances, an abuse of discretion. After review of the record, we do not agree.

Judgment of sentence affirmed.

---

[3] For the purpose of this rule it is immaterial whether the intoxication results from the voluntary use of liquor or drugs, see *Commonwealth v. Tarver,* 446 Pa. 233, 284 A. 2d 759 n.4 (1971).