398 A.2d 968
**COMMONWEALTH of Pennsylvania**
v.
**Thomas MATHIS, Appellant.**
Supreme Court of Pennsylvania.
Submitted Nov. 13, 1978.
Decided March 14, 1979.

110

Philip D. Lauer, Easton, for appellant.

John E. Gallagher, Dist. Atty., Easton, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-EROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In September, 1971, Sebastiano Patiri was robbed and fatally stabbed at his home in Northampton County. Appellant Thomas Mathis was arrested and charged under the Penal Code with murder, burglary, larceny, and robbery (with an offensive weapon).[1]  The Commonwealth sought to prove both an intentional killing and felony murder.[2]  A

---

1.  The episode occurred before June 6, 1973, the effective date of the Crimes Code, see Act of December 6, 1972, P.L. 1482, § 6, and the Penal Code governs.  See id., § 2.

2.  The Penal Code, Act of June 24, 1939, P.L. 872, § 701, formerly 18 P.S. § 4701, classed both offenses murder of the first degree.  Compare Crimes Code, 18 Pa.C.S.A. §§ 2502(a) & 2502(b) (Supp.1978) (murder of first degree an "intentional killing;" "felony murder" deemed murder of second degree).

jury convicted appellant on all charges. Appellant was sentenced to life imprisonment on the murder conviction and concurrent sentences on the other convictions. This Court affirmed per curiam. 460 Pa. 421, 333 A.2d 846 (1975). Appellant then filed a petition for relief under Section 3(c)(12) of the Post Conviction Hearing Act.[3] After an evidentiary hearing, the PCHA court denied appellant's petition. We affirm.[4]

## I

Appellant's brother, Edward Mathis, testified that before Patiri's death, Daniel Graves, William Johnson, Edward Mathis, and appellant drank a total of three bottles of wine. Appellant, Graves, and Edward Mathis left Johnson. The three discussed going to Patiri's home and robbing him. Upon arriving at Patiri's home, the three devised a plan. Edward Mathis was to enter the house through the roof while appellant and Graves were to engage Patiri in conversation outside his house. Edward Mathis went to the roof, entered Patiri's home, and searched the upper floor. He then went downstairs. While Edward Mathis was searching downstairs, Patiri entered the house. Edward Mathis hid

3.  Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–3(c)(12) (Supp.1978). Section 3(c)(12) makes the abridgement "of any right guaranteed by the constitution or laws of this State or the constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right" a ground for post-conviction relief.

4.  Appellant's PCHA petition also challenged the effectiveness of previous counsel in several respects. The PCHA court rejected the claims and appellant renews them in this Court. Appellant contends that counsel: (1) should have challenged the composition of the alleged all-white grand and petit juries in the proceedings; (2) should have inquired into petit jurors' feelings concerning racially mixed couples; (3) did not effectively cross-examine Edward Mathis; (4) should have pursued a challenge to the sufficiency of evidence to prove robbery with an offensive weapon; (5) did not effectively pursue appellant's request that the court appoint new counsel; (6) did not pursue appellant's request for a trial transcript; and (7) was ineffective for not pursuing an intoxication defense. We have considered each claim and conclude that each is without merit.

behind some bags in the corner of a room. He saw Graves and appellant enter the house. Patiri turned around, and Graves struck Patiri with his fist. Graves and appellant then both beat Patiri "for a while," and appellant kicked him. Edward Mathis then ran back upstairs and jumped off the roof. He met Graves and appellant, who had also left the house, and the three fled together. Later Graves pulled out money, which the three divided.

Appellant denied that any plan existed either to attack Patiri or enter his house. According to appellant, he and Graves stood on the side porch of Patiri's house and drank from a bottle of wine while Edward Mathis went to the roof. Appellant stated that when he and Graves first went to the porch, Patiri was not there, but after about five minutes, Patiri came to the door. Appellant claimed Graves said they were just drinking and Patiri said he did not mind. Graves then asked Patiri for a glass of water, Patiri agreed, and Graves followed Patiri into the house. Appellant claimed that about one and one-half minutes later, he heard a loud thump, thought Edward Mathis had fallen, went into the house, and found Graves stabbing Patiri. Appellant claimed he was momentarily stunned but then tried to take a knife away from Graves. Appellant claimed that as he pulled Graves away, Graves kept kicking Patiri. Appellant testified that he called Edward Mathis to assist Patiri so Patiri would not die. Appellant testified that, before the episode, the group had been drinking, but appellant did not attempt to defend on the ground of intoxication.

## II

The court charged the jury on the law of both intentional killing and felony murder. The court then instructed:

"I further charge you that in the testimony of this case there is testimony of drinking of wine. Thomas Mathis testified that three quarts of wine were bought, and it is his testimony that they drank about a quart of the wine. Because you have that testimony I find it necessary to charge you that in a felony murder, the question of

intoxication is of no legal significance. I do not understand the testimony of Thomas Mathis being that he claimed he was intoxicated, he stated he drank wine, but nonetheless, because that testimony is before you I want to make sure that you understand that the felony murder rule definition of law in Pennsylvania does not make intoxication a defense. If one or more persons join to commit the felonies of robbery and burglary, and if a killing occurs in connection with the commission of those crimes of robbery and burglary, it is felony murder and it is first degree murder and if intoxication exists, that is of no significance. It is up to you as to the significance of Thomas Mathis' testimony as to what drink there was. But, I want to make clear, if one of you were to focus on that aspect of the testimony, to make you realize that under the Doctrine of Felony Murder, as I have explained it to you now, I think, rather thoroughly, the question of drinking, even to the extent of intoxication, is of no legal significance."

This charge was consistent with what was then the most recent decision of this Court on the effect of voluntary intoxication on the element of specific intent in crimes other than felonious homicide. See *Commonwealth v. Tarver*, 446 Pa. 233, 284 A.2d 759 (1971). Appellant did not object to the charge.

In support of his claim under Section 3(c)(12) of the PCHA, appellant urges that the trial court's charge on the effect of voluntary intoxication, though correct at the time of trial, is now improper under *Commonwealth v. Graves*, 461 Pa. 118, 334 A.2d 661 (1975).[5] *Graves* rejected *Tarver* and held that voluntary intoxication negates the element of specific intent in burglary and robbery. Appellant argues that the Constitution compels that *Graves* be given "retrospective" effect and cites *Commonwealth v. Grello*, 464 Pa. 250, 346 A.2d 543 (1975), as an instance where this Court applied *Graves* "retrospectively."

5. Opinions of this Court in *Graves* and Mathis's direct appeal were filed the same day. *Graves* arose from convictions based upon charges against appellant's alleged accomplice.

A petitioner seeking post-conviction relief must prove "[t]hat the error resulting in his conviction and sentence has not been finally litigated or waived." PCHA, § 3(d). Section 4(b) of the PCHA provides:

"For the purposes of [the PCHA], an issue is waived if:

(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue."

We are of the view that appellant has failed under Section 3(d) to establish that his present challenge to the alleged erroneous charge, not objected to at trial, has not been waived.

Appellant could have pursued a defense of voluntary intoxication. The Commonwealth sought to establish felonious homicide as well as felony murder. It has long been the law of Pennsylvania that voluntary intoxication will negate the element of specific intent in felonious homicide. E. g., *Commonwealth v. Jones*, 355 Pa. 522, 50 A.2d 317 (1947). Nothing in *Tarver* changed this rule; indeed, *Tarver* reaffirms it:

"If the charge is *felonious* homicide, intoxication, which is so great as to render the accused incapable of forming a wilful, deliberate and premeditated design to kill or incapable of judging his acts and their consequences, may properly influence a finding by the [fact finder] that no specific intent to kill existed."

*Tarver*, 446 Pa. at 239, 284 A.2d at 762 (emphasis in original).

Had appellant raised a defense of voluntary intoxication, he would have acknowledged participation in the alleged criminal activity. Such a defense, however, would not have precluded a verdict of murder of the second degree. See id. The record supports the conclusion that appellant sought to

avoid any responsibility for Patiri's death. He presented the jury with the theory that he had not been a participant in the crimes and sought acquittal on all charges. The defense of non-participation was therefore incompatible with a claim under an intoxication theory that he participated in criminal activity but, because of his intoxicated condition, was subject only to limited liability. Thus, appellant's decision not to pursue a claim of voluntary intoxication as a defense to felonious homicide derived from a trial strategy which precluded raising intoxication as a defense to any other charge.[6]

Order affirmed.

POMEROY, former J., did not participate in the decision of this case.

EAGEN, C. J., concurs in the result.

6. Appellant's reliance upon *Commonwealth v. Grello*, 464 Pa. 250, 346 A.2d 543 (1975), is misplaced. There, the appellant, as in *Graves* and unlike here, pursued an intoxication defense and requested but was denied a charge that voluntary intoxication negates the element of specific intent in the offenses charged.